IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                              CASE NO.: 8:25-cv-116-KKM-SPF

DARRYL J. MADISON, MALIK
F. EUGENE, YVETTE
MADISON, MARLESA J.
BROWN, and
MADISON & SONS ENTERPRISES, d/b/a
MADISON TAX SERVICES,

    Defendants.
_____/

**DEFENDANTS DARRYL J. MADISON, AND MADISON & SONS
ENTERPRISES' RESPONSE IN OPPOSITION TO UNITED STATES'
MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES BY DARRYL
J. MADISON AND
MADISON & SONS ENTERPRISES (ECF No. 50)**

Defendants Darryl J Madison and Madison & Sons Enterprises ("Madison Defendants"), respond to United States' Motion to Strike Certain Affirmative Defenses by Defendants Darryl J Madison and Madison & Sons Enterprises (ECF No. 50) and state:

**Background**

Madison Defendants are in the business of preparing tax returns for others. Congress has given the secretary of the Treasury the ability to hold tax return preparers, such as Madison Defendants accountable for willful and negligent errors in connection with the preparation of tax returns, see 26 U.S.C. Sections 6694, 6695 and 6701 (the "Specific Code Provisions"). In addition, Congress also created general equitable relief for the secretary of the Treasury 26 U.S.C. Sections 7402 and 7408 (the "General Equitable Code Provisions") to supplement the Specific Code Provisions.

Plaintiff has sought to avail itself of the General Equitable Code Provisions in this case, notwithstanding the fact that the Specific Code Provisions were drafted to expressly address the negative conduct alleged within the complaint.

**The Wrongful Levy**

While, according to the complaint, Darryl Madison has been a tax return preparer since 2003, Plaintiff's difficulties with Defendants began in 2013 when they advised Darryl Madison that "a large number of tax returns he prepared for the 2011 and 2012 tax years contained errors." *Id* @ paragraph 23.

Plaintiff goes on to chronicle additional alleged shortcomings with Madison Defendants' services through 2016. *Id.* @ paragraph 25.

Plaintiff contends that they assessed penalties, under the Specific Code Provisios, against Madison Defendants in August of 2019 for 2015, 2016 and 2017 tax returns prepared by Defendants (the "2015 – 2017 Penalties"). *Id.* @ paragraph 26.

Plaintiff claims that they notified Madison Defendants of the 2015 – 2017 Penalties, that Madison Defendant have not stopped or corrected the practices complained of and that the 2015 – 2017 Penalties remain unpaid. *Id.* @ paragraph 27.

Madison Defendants contend that they did not receive notice of the 2015-2017 Penalties, as Plaintiff sent them Darryl Madison's old address. Indeed, through a freedom of information request, Madison Defendants discovered that Plaintiff's notices had been returned to the Internal Revenue Service as undelivered because the address was not correct.

When Madison Defendants learned of the 2015-2017 Penalties, they reached out to the Internal Revenue Service to deal with them. Unfortunately, this was during the Covid pandemic, and the local Internal Revenue Services offices were closed. Madison Defendants contend that

they were unable to reach Plaintiff's representatives to address the action taken in connection with the Specific Remedies.

At some point in this process, without Darryl Madison's knowledge, the Internal Revenue Service levied on several securities accounts held in his name. The Internal Revenue Service liquidated the accounts and took the proceeds, which Darryl Madison contends were in excess of $200,000.00.

To make matters worse, the Darryl Madison contends that the assets in the accounts were option contracts which appreciated dramatically after the levy occurred, compounding the loss.

Darryl Madison contends the levy was wrongful, and he was denied his due process rights in connection with the enforcement of the 2015 – 2017 Penalties. To the extent that the above referenced conduct of the Plaintiff was wrongful, Madison Defendants have raised their resulting damage claim as an affirmative defense (a) by way of set off to Plaintiff's disgorgement claim and (b) by way of unclean hands to all of Plaintiff's equitable claims.

## Defamation

Plaintiff filed this civil action on January 15, 2025, and on the same day published a "Press Release" (the "Press Release") titled "Justice Department

4

Sues to Shut Down Florida Tax Return Preparers." See Exhibit "A."

The Press Release accurately summarizes the allegations of the complaint and contains a hyper link to allow the reader to review the complaint.

In the past (before the internet) this process was designed to give notice to independent news agencies to allow them to report on significant matters contained within the public record. Press releases were not sent to the general public.

A closer reading of this "press release", demonstrates that it is, at least in part, written to the general public as opposed to the independent news agencies (the Press), as evidenced by the last sentence "If you believe that one of the enjoined persons or businesses may be violating an injunction, please contact the Tax Division with details."

Madison Defendants have received numerous calls from concerned clients who viewed the "Press Release" and complaint on the internet. More troubling are the calls that Madison Defendants did not receive from established and future customers, because of the unproven allegations contained within the "Press Release".

As of the filing of Madison Defendants' Amended Answer and Affirmative Defenses, the Press Release was the first item to appear in a Google search of "Darryl Madison." In the world of the internet competition, the first listing from an internet search is intense. Many entities pay for "Google Ad Words" to elevate their listing above the other search results. There are other paid strategies that a party can use to elevate the search result of a posting, thereby increasing the chance that it will be read by the target audience. Madison Defendants contend that Plaintiff's actual target audience was his existing and future clients, not the press.

Illustrating Madison Defendants' contention, the search ranking of Plaintiff's "Press Release" outperformed those of Instagram, LinkedIn, Facebook, ESPN, IMDb, GoFundMe, FindLaw, and Darryl Madison's own website. At a minimum this creates a reasonable likelihood that Plaintiff took extra-ordinary measures to broadcast their negative message regarding Defendants to the general public. Madison Defendants' contend that such additional activity may render the traditional protections, such as litigation privilege *inter alia,* inapplicable.

Moreover, as this claim is brought as a defense to an equitable claim rather than an independent claim for affirmative relief, Plaintiff cannot rely

upon the traditional defenses such as sovereign immunity and the Federal Tort Claims Act to insulate their conduct.

Defendants are not public figures, and the statements contained within the complaint are *per se* defamatory: "Defendants engage in a pattern of falsely or fraudulently understating their customer's taxes" *Id.* @ paragraph 229.

"Defendants' actions harm their customers… Defendants' prepared false and fraudulent returns that potentially expose their customers to IRS audits, statutory penalties, and repayment of erroneous refunds. *Id.* @ paragraph 236.

To be clear, and contrary to the contention of Plaintiff's motion, Madison Defendants do not take issue with the inclusion of statements such as these within the complaint. Madison Defendants take issue with the use of Plaintiff's alleged extraordinary efforts to disseminate the complaint to Madison Defendants' current and potential clients, in an attempt to shut down Defendants' business before proving their allegations and or securing the injunctive relief they seek.

It is based upon this alleged inequitable conduct, taken in connection with the allegations regarding the improper levy that Madison Defendants

seek setoff against any claim for disgorgement and the denial of the injunctive relief sought by Plaintiff.

## Memorandum of Law

Both because striking a portion of a pleading is a drastic remedy, and because it is often sought by the moving as a dilatory tactic, motions under Rule 12(f) of the Federal Rules of Civil Procedure (striking portions of pleadings), are viewed with disfavor and infrequently granted. *SEC v. Cuban*, 798 F.Supp.2d 783, 787 (N.D. Tex. 2011).

Plaintiff seeks to strike Madison's First Affirmative Defense – Setoff and Second Affirmative Defense – Unclean Hands, under two theories. First, that both are unavailable to Madison Defendants as a matter of law, second that both are so unrelated to Plaintiff's claims that Plaintiff would be prejudiced by having to litigate them, as they "would clutter the case, and open the door to frivolous discovery". Plaintiff's Motion to Strike at page 1.

In viewing the motion to strike, the Court must view the pleadings in a light most favorable to the pleader." *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, *1 (E.D. Missouri 2008), citing *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1211 (S.D. Cal. 2007).

A motion to strike should not be granted if "the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits. *Kuhlmeier v. Hazlewood School District*, 578 F.Supp. 1286, 1295 (E.D.Mo.1984).

Courts should avoid deciding new or close questions of law on a motion to strike due to the risk of offering an advisory opinion. *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, *1 (E.D. Missouri 2008).

Plaintiff must show that the issues raised within Madison Defendants' affirmative defenses are irrelevant and cannot affect the cases outcome. Not just that they are burdensome and could clutter the case. *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, *1 (E.D. Missouri 2008).

**Set off**

Madison Defendants contend that they were deprived of their due process rights to contest the 2015-2017 Penalties and that Plaintiff wrongfully levied upon Darryl Madison's securities accounts. They seek to set off all damages from the forgoing against any disgorgement award in connection with Count IV of the complaint.

9

Plaintiff does not appear to contend that the wrongful levy claim is frivolous or invalid, rather they contend that it is "unrelated" to the pending action and that its presence throughout the proceeding would be prejudicial to them by forcing them to respond to irrelevant discovery which would be unduly burdensome.

Rather than raise the matter as an affirmative defense, Plaintiff, suggests that Madison Defendants "pay the penalties, then file an administrative claim for their refund, and, if not satisfied, file a claim for judicial review", rather than bothering Plaintiff with such claims in this case. *Id.* @ page 1, Footnote 1.

This position is completely at odds with the allegations of the complaint. Plaintiff's claims for relief are, in part, based upon the very allegations which gave rise to the imposition of the 2015-2017 Penalties. The complaint contains the following allegations regarding the 2015-2017 Penalties:

Paragraph 23. e. "On September 16, 2017, the IRS notified Madison that a large percentage of tax returns he prepared for customers for the 2016 tax year claimed wage income without W-2s to support the claims, indicating he may not have met his due diligence requirements."

Paragraph 24. "Between 2014 and 2016, the IRS received complaints from customers about the return preparation services at Madison Tax Services."

Paragraph 25. "The complaints alleged that Madison falsified claims on tax returns, understated customer taxable income, and failed to provide taxpayer with support when taxpayers were audited buy the IRS and sought assistance to rectify errors."

Paragraph 26. "On August 12, 2019, the IRS assessed penalties against Madison under 26 U.S.C. Section 6694(b) for his willful or reckless conduct in preparing tax returns in 2015, 2016 and 2017."

Paragraph 27. "The IRS notified Madison of the penalties. Madison has not stopped or corrected the improper return preparation practices as a result of the assessed penalties. The penalties remain unpaid."

Plaintiff has asked the court to permanently enjoin Darryl Madison from continuing in his life's work, based in part on the aforementioned allegations which are directly related to the 2015-1017 Penalties, because they would clutter the case and would require Plaintiff to respond to unduly burdensome discovery regarding 2015-2017 Penalties.

Plaintiff cites *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, *1 (E.D. Missouri 2008) in support of their contention. The court in this case, when analyzing the prejudice an affirmative defense sought to be stricken, will visit on the moving party said "The prejudice requirement is satisfied if striking the defense would, for example, prevent a party from engaging in burdensome discovery, or otherwise expending time and resources litigating irrelevant issues **that will not affect the case's outcome**." (Emphasis supplied).

Plaintiff does not argue that the issues surrounding the assessment and levy concerning the 2015-2017 Penalties will not affect the cases outcome.

Plaintiff recommends, instead, that Madison Defendants pay the 2015-2017 Penalties, then file a separate action to contest their validity. The very allegations which Plaintiff seeks to strike include Madison Defendants' claim that the 2015-2017 Penalties have been paid in whole or in part through the wrongful levy. And if Madison Defendants followed Plaintiff's recommendation – initiating a separate action. Plaintiff would still be required to respond to the very same discovery they claim is unduly burdensome in yet another lawsuit.

12

Madison Defendants suggest that the more equitable and appropriate path, would be to allow the parties to develop the record as to notice, levy and payment of the 2015-2017 Penalties in connection with this action. Particularly since Plaintiff relies, in part, upon these issues to support its claim for injunctive relief.

By raising the 2015-2017 Penalties in paragraphs 23-27 of the complaint, Plaintiff put these matters at issue in this case, it is unfair for them to contend that their determination and the determination of the corresponding issues raised in response cannot affect the case's outcome at this preliminary stage in the case when the court must view the pleadings in a light most favorable to the Madison Defendants.

## Unclean Hands

Plaintiff asserts that "'Unclean Hands' does not apply against the United States in a civil enforcement action and is therefore insufficient as a matter of law." Plaintiff's motion to strike @ page 4.

Plaintiff has asserted this position in other cases. The court in the case of *Securities and Exchange Commission v. Mark Cuban*, 798 F.Supp. 783, 788 (N.D. Texas 2011) provides a detailed analysis as to why this position is incorrect.

The court in *SEC v. Cuban*, found that there was no controlling precedent in the Fifth Circuit establishing the proposition that unclean hands is unavailable as a defense to a civil enforcement action brought in the public interest by the SEC. *Id.* Plaintiff has cited no other controlling precedent.

Ironically, the court, in a case cited by Plaintiff, *United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir. 1974), stated that "the United States is no more immune to the general principles of equity than any other litigant." *Id.* And that "there is no authority by which equity can come to the aid of an illegal and fraudulent scheme, regardless of the beneficence of the ultimate purpose." *Id.*

Balancing this proposition, it went on to say, "On the other hand, 'unless the Government did something which in good conscience it should not have done, or failed to do something fair dealing required it to do, it comes into the court with clean hands and is entitled to the equitable relief it obtained.'" *Id.*

Madison Defendants claim, within their second affirmative defense (Unclean Hands) that Plaintiff did things which in "good conscience it should not have done":

1. Proceeding to enforce the 2015-2017 Penalties without giving adequate notice to Madison Defendants, depriving them of their due process rights;

2. Levying upon Darryl Madison's securities accounts without notice and an opportunity to object;

3. Raising the 2015-2017 Penalties and alleging that they were not paid in this matter as a relevant fact which the court should consider in connection with Plaintiff's request to permanently enjoin Madison Defendants from engaging in their business, then contending that Defendants should not be permitted to raise any defenses with regard to those issues.

4. Engaging in a digital media marketing program targeting Madison Defendants' clients with the dissemination of their "Press Release" to achieve their goal of shutting down Madison Defendants' before proving the allegations within their complaint.

## Conclusion

Madison Defendants have satisfied the pleading requirements for their first and second affirmative defenses. The claims asserted therein are inextricably intertwined with the subject matter of this case and bear on it's

outcome. There is no controlling case law validating Plaintiff's position that Madison Defendant's Unclean Hands defense is barred. And the very case law cited by Plaintiff recognizes that Plaintiff is not immune from such claims. It would be inequitable, and contrary to the applicable case law to foreclose Madison Defendants from litigating these claims in connection with their defense in this action at this early point in the case, where Madison Defendants' claims must be viewed in a light most favorable to them. The court should permit Madison Defendants to develop the record regarding the issues raised concerning Plaintiff's alleged inequitable conduct.

Respectfully submitted,

/s/ Richard J. McIntyre
Richard J. McIntyre, Esq.
Florida Bar No. 0962708
John D. McIntyre
Virginia Bar No. 35925
McIntyre Thanasides Bringgold
Elliott Grimaldi & Guito, P.A.
Primary Email: rich@mcintyrefirm.com
Secondary Email:
mariana@mcintyrefirm.com
Secondary Email:
smurphy@mcintyrefirm.com

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 28th day of April 2025:

Daniel Applegate, Esq.
Daniel.a.Applegate@usdoj.gov.

Virginia Giannini, Esq.
Virginia.Giannini2@usdoj.gov

Matthew Farmer, Esq.
MattFarmer1@aol.com