UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                  Case No. 8:25-cv-116-KKM-SPF

DARRYL J. MADISON,
MALIK F. EUGENE,
YVETTE MADISON,
MARLESA J. BROWN, &
MADISON & SONS ENTERS.
D/B/A MADISON TAX SERVS.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is the United States' Motion for Default Judgment and Permanent Injunction against Defendant Darryl Madison (Doc. 95) and Motion to Hold Defendant Madison Tax Services in Contempt (Doc. 96). For the reasons set forth below, the undersigned recommends that the United States' motion against Madison be granted, the United States' motion against Madison Tax Services be granted in part and denied in part, default judgment be entered against Madison and Madison Tax Services, and the United States be awarded a money judgment.

### I.    Background

In January 2025, the United States brought this action against Defendant Darryl Madison ("Madison") his tax preparation business Defendant Madison & Sons Enterprises d/b/a Madison Tax Services ("Madison Tax Services") (collectively, "Defendants") for unlawfully claiming deductions and credits on behalf of their customers to maximize refunds

and, in turn, defendants' fees.[1]  (Doc. 1 at ¶ 31).  Under the Internal Revenue Code ("IRC"), the United States seeks to permanently enjoin Madison from preparing tax returns for others and requiring Madison to disgorge ill-gotten gains received from preparing false tax returns. (*Id.* at ¶¶ 1–2, 258).

Madison has worked as a tax preparer since 2003 and is the sole owner of Madison Tax Services.  (*Id.* at ¶¶ 6, 10-13).  Between 2013 and 2017, the Internal Revenue Service ("IRS") notified Madison that many of the tax-returns he prepared contained errors. (*Id.* at ¶ 23).  Customers had also filed complaints with the IRS alleging Madison falsified claims on tax returns, understated customers' taxable income, and failed to provide taxpayers with support when they were audited.  (*Id.* at ¶¶ 24-25).  In 2019, the IRS concluded that Madison had acted recklessly or willfully with this conduct and assessed penalties against him.  (*Id.* at ¶ 26).  This, however, was not the end of Madison's wrongdoing.

From January 2023 to January 2024, Madison prepared returns with an expired Preparer Tax Identification Number ("PTIN"), a number required by the IRS for anyone filing a tax return for compensation. (*Id.* at ¶¶ 52-54).  Defendants also improperly listed the Employer Identification Number ("EIN") of a political campaign on their clients' returns instead of the EIN assigned to Madison Tax Services.  (*Id.* at ¶ 59).  And, after Madison was denied an Electronic Filing Identification Number ("EFIN") in 2016 because of a prior conviction involving forged instruments, a "Sylvester Lloyd" applied for and received an EFIN for a company called KA USA Investment & Development d/b/a Madison Tax

---

[1] The United States also named Malik F. Eugene, Yvette Madison, and Marlesa J. Brown (Doc. 1), but none of these individuals are subject to the United States' instant motions.

Services ("KA USA"). (*Id.* at ¶¶ 61-64). Mr. Lloyd does not live in Florida and was only identified as the tax return preparer on two of Madison Tax Services's returns in 2023. (*Id.* at ¶ 63). Madison's wife operates KA USA, but Madison is listed as the primary contact on the company's EFIN application. (*Id.* at ¶ 64). Defendants file federal tax returns for their customers using KA USA's EFIN. (*Id.* at ¶ 63).

Madison also continues to misrepresent customer information on tax returns. He fabricates itemized deductions to improperly reduce his customer's taxable income. (*Id.* at ¶ 70-72). Madison also understates his customers adjusted gross income by inventing losses claimed by sole proprietorships the customer owns. (*Id.* ¶¶ 79-80). For some customers, Madison reports income and expenses from entirely fictitious sole proprietorships while, in other instances, he inflates the income or expenses to provide the customer a tax benefit. (*Id.* at ¶¶ 81, 82). Madison additionally exploits the Residential Energy Credit, which is a non-refundable tax credit for those who make certain energy-efficient improvements. (*Id.* ¶¶ 91, 92). For some customers, Madison lists false Residential Energy Credits while other returns report these credits as offsetting other income. (*Id.* at ¶¶ 94, 95). All of these tactics are meant to reduce the customer's taxable income or artificially inflate their tax refund. (*Id.* at ¶¶ 70-72, 77, 83, 89, 91).

Madison and Madison Tax Services appeared in this action in March 2025 and were represented by the same attorney. (Doc. 28). On June 24, 2025, however, Defendants' counsel was permitted to withdraw. (Doc. 75). Madison was informed that he was "expected to adhere to the deadlines set forth by the Court as well as to the procedural requirements of the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida."

3

(*Id.*).  And Madison Tax Services was directed to obtain substitute counsel by July 24, 2026, because "a corporate entity may appear and be heard only through counsel admitted to practice in the district."  (*Id.*) (citing M.D. Fla. R. 2.02(b)(2)). The Court warned Madison Tax Services "that failure to obtain substitute counsel may result in a default judgment against it." (*Id.*).

On July 28, 2025, Madison filed a motion for an extension of time to seek counsel. (Doc. 78).  And, just after Madison filed his motion, the United States filed a motion to compel discovery responses from Defendants.  (Doc. 82).  The Court granted Madison's motion on August 13, 2025, and reminded him that he "may seek representation for himself at any point while he remains *pro se*" but again warned that he was still obligated to participate in discovery as a *pro se* party, "including responding to motions to compel and the government's discovery requests."  (Doc. 85).  The Court also reminded Madison Tax Services that it "may not be represented by a pro se party."  (*Id.*) (citing M.D. Fla. R. 2.02(b)(2)).  The Court gave Madison Tax Services until August 25, 2025, to secure counsel.[2] (*Id.*).

Madison Tax Services did not secure counsel by the deadline nor did either Defendant respond to the United States' motion.  The Court *sua sponte* directed Madison Tax Services to secure counsel no later than September 23, 2025, and was once again warned that default judgment could be entered against it if it failed to comply with the Court's Order.  (Doc. 89).

---

[2] The Court's Order was mailed to Defendants at their addresses of record, which complies with the service requirements of Rule 5, which authorizes service of pleadings and other papers on a person's last known address. Fed. R. Civ. P. 5(b)(2)(C).

Madison was directed to respond to the United States' motion also by September 23, 2025, and was warned that the motion could be treated as unopposed if he failed to respond. (*Id.*).

Madison Tax Services did not secure counsel by the Court's deadline, nor did either party respond to the United States' motion. The Court granted the United States' motion to compel as unopposed and directed Defendants to produce the requested discovery. (Doc. 90). The Court then directed Defendants to appear at a show cause hearing on October 22, 2026, to explain why they should not be sanctioned for failing to comply with the Court's Orders.[3] (Doc. 91). Defendants were warned that default judgment could be entered against them. (*Id.*).

At this first show cause hearing, the United States explained that it had not received any communications or productions from Defendants. Madison appeared at the hearing and represented that financial difficulties were causing the dilatoriness, denied receiving copies of the Court's Orders, and requested additional time to comply with the Court's directives.[4] The Court granted a limited extension to both Defendants until October 29, 2025, by which to comply with the Court's directives. (Doc. 92). Madison was again reminded that even though he proceeded *pro se*, he was responsible for participating in discovery and complying with the Court's deadlines and orders. (Doc. 92). The Court also repeated that corporations cannot be represented by *pro se* persons, and that both Defendants faced default judgment if

---

[3] A copy of order to compel discovery and to show cause were mailed to Defendants at their addresses of record.

[4] Madison confirmed that the record contained the correct mailing addresses and email address for both him and Madison Tax Services.

they continued to fail to comply.  (*Id.*).[5]  The United States was directed to move for default judgment against Defendants if they failed to comply.  (*Id.*).

On October 30, 2025, attorney Julius E. Adams entered his appearance on behalf of Defendant Madison Tax Services.  (Doc. 94).  But, in late November 2025, the United States filed the instant motions against Defendant Madison and Defendant Madison Tax Services.  (Docs. 95, 96).  Then, on January 30, 2026, the United States filed a request to extend the discovery deadline because Defendants had failed to provide any discovery.  (Doc. 98).  The Court granted the United States' request and extended discovery until May 28, 2026.  (Docs. 99, 100).

The Court held a final show cause hearing on April 30, 2026, regarding Defendants' continued failures to comply with the Court's discovery order.[6]  Madison did not appear at the hearing but Mr. Adams appeared on behalf of Madison Tax Services.[7]  The United States confirmed that neither Defendant had produced any discovery.  It also notified the Court that Madison and Madison Tax Services were continuing to file tax returns for customers as recently as March 2026 and estimated that hundreds had been filed for the 2025 tax year.

For Madison Tax Services's part, it offered no explanation for the failure to comply with the Court's Orders and, aside from Madison's assurances to Mr. Adams that the requested discovery was forthcoming, there was no indication that any steps were taken to

---

[5] The risk of default being entered against Defendants was explained to Madison at the hearing and in the Order memorializing the Court's ruling (Doc. 92) which was mailed to Defendants at their addresses of record.

[6] A copy of the notice of show cause hearing was mailed to Madison at his address of record.

[7] Mr. Adams was over twenty minutes late for the hearing due to another state court proceeding that was scheduled for around the same time.  Mr. Adams was aware of the conflicting timeframes prior to both hearings but did not seek relief from the Court.

comply.   Madison Tax Services therefore failed to demonstrate either due diligence in attempting to comply with the Court's orders or just cause for the delay.

The Unites States now asks the Court to sanction Madison and Madison Tax Services for violating the Court's discovery order and to enter default judgment against them.  (Docs. 95, 96).  The United States additionally asks that a permanent injunction be entered against Madison and that he be directed to pay the United States disgorgement.  Defendants did not respond the Unites States' motions, so they are deemed unopposed.[8]  M.D. Fla. R. 3.01(g) (2025).

## II.    Analysis

### a.  Default Judgment

When a party "fails to obey an order to provide or permit discovery," Rule 37(b)(2) authorizes the court to enter such orders as are just, including an order "dismissing the action[.]"  Fed. R. Civ. P. Rule 37(b)(2)(A)(v).  The dismissal of a claim or the entry of a default as a sanction for violating a discovery order is a drastic remedy which should only be employed where lesser sanctions would be insufficient.  *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (stating that "the severe sanction of a dismissal or default judgment [under Rule 37] is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.") (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)).  But dismissal is appropriate when a party's "recalcitrance is due to willfulness, bad faith or fault."  *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976)).

---

[8] Mr. Adams was representing Madison Tax Services during the response period.

And indeed, the Supreme Court has cautioned against the "natural tendency on the part of reviewing courts . . . to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order." *Nat'l Hockey League*, 427 U.S. at 640. A defaulting party is deemed to admit a plaintiff's well-pleaded allegations of fact. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

The record establishes that Defendants willfully failed to comply with the United States' discovery requests despite multiple extensions of time, failed to respond to the United States' motion to compel, failed to maintain contact with counsel, and failed to comply with multiple Court orders. Defendants were also expressly warned about the possibility of default judgment as a sanction on multiple occasions. (Docs. 47, 58, 69). Moreover, at the show cause hearing, Defendants failed to demonstrate either diligence or just cause for the delay in proceedings. Madison continues with business-as-usual and has filed hundreds of client tax returns during the pendency of the instant motions all while ignoring Defendants' discovery obligations and the Court's directives. Considering the foregoing, the Court finds that Defendants' noncompliance with the Court's orders to be willful and deliberate.

The Court also finds that a lesser sanction than dismissal will not suffice. Under these circumstances, there is no cause to believe that monetary sanctions, excluding evidence, or striking claims would cause Defendants to comply with orders of the. Indeed, Madison's conduct continued after being fined and Madison's prior excuses of financial issues fall flat considering Defendants' continuation of the business. And staying further proceedings in this case until the orders are obeyed will only reward Defendants' defiance of their obligations

while at the same time prejudicing the United States' ability to timely litigate this matter to conclusion. Default judgment should therefore be entered against Madison and Madison Tax Services. [9] *See Smith v. Atlanta Postal Credit Union*, 350 F. App'x 347, 351 (11th Cir. 2009) ("Having already warned the plaintiff and attempted to deter future abuses of the discovery process by imposing the lesser sanction of attorney's fees, the district court did not abuse its discretion in dismissing [Plaintiff's] action with prejudice.").[10]

### b. Permanent Injunction

"The standard for a permanent injunction is the same as for a preliminary injunction, with the exception that a movant must demonstrate actual, instead of likely, success on the merits." *Barn Light Elec. Co., LLC v. Barnlightdeals.com*, 2025 WL 3194736, at *2 (M.D. Fla. Oct. 20, 2025) (citing *Amoco Prod. Co. v. Vill. Of Cambell, Ark.*, 480 U.S. 531, 546 n.12 (1987)). *Amoco Prod. Co. v. Vill. of Gambell, Ark.*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987) "The Court has recognized that injunctive relief is appropriate, even in the context

---

[9] There is a split between courts in this District about whether the allegations in the complaint must also be legally sufficient before default judgment can be entered as a sanction under Rule 37. *Compare Scopelliti v. McClean*, 2022 WL 3209495, at *10 (M.D. Fla. July 11, 2022) (incorporating the sufficiency of the complaint into its analysis) (quoting *Solvay Specialty Polymers USA, LLC v. Liu*, 331 F.R.D. 187, 190 (N.D. Ga. Mar. 28, 2019) *with United States v. Marc*, 2019 WL 7461689, at *4 (M.D. Fla. Dec. 16, 2019) (not incorporating the sufficiency of the allegations into its analysis). Since this issue is not briefed and the merits of the United States' action are nonetheless confirmed as part of the permanent injunction analysis, the Court need not weigh in on this issue.

[10] The United States also requests that the Court find Madison Tax Services in contempt for its violations of the Court's discovery orders. (Doc. 96). Because the Court finds that Madison Tax Services's failure to comply warrants the Rule 37 sanction of default judgment, the Court does not need to also reach a finding on civil contempt to provide the same relief. *See* Fed. R. Civ. P. 37(b)(2)(A) (providing that a party that fails to obey a discovery order can be sanctioned by "(vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination"); *cf. Eagle Hosp. Physicians*, 561 F.3d at 1302 n.1 ("Because the district court found that the alleged discovery violations were not sanctionable, the court's power to issue sanctions arose pursuant to its inherent power rather than under" Rule 37).

of a default." *Id.* (citing *Nat'l Staffing Sols., Inc. v. Young Holdings & Invs., LLC*, 2020 WL 6587246, at *1 (M.D. Fla. Aug. 13, 2020) ("Where damages are difficult to ascertain, injunctive relief may also be awarded in a default situation, without an evidentiary hearing.").

The United States brings this lawsuit pursuant to Sections 7402, 7407 and 7408 of the IRC. While these statutes are related, there are some nuanced differences. To establish liability under section 7402, the United States must prove a pattern of gross negligence or recklessness, and that injunctive relief is "'necessary or appropriate for the enforcement of the internal revenue laws.'" *United States v. Stinson*, 239 F. Supp. 3d 1299, 1324-25 (M.D. Fla. 2017) (citing *United States v. Stinson*, 661 F. App'x 945, 952 (11th Cir. 2016)). The decision to issue an injunction pursuant to section 7402 "is governed by the traditional factors shaping the district court's use of the equitable remedy." *Ernst & Whinney*, 735 F.2d 1296, 1302 (11th Cir. 1984). As such, a plaintiff is entitled to a permanent injunction under this section if it can demonstrate:

> (1) that it has suffered irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardship between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Enpat, Inc. v. Budnic*, 2011 WL 1196420, at *3 (M.D. Fla. Mar. 29, 2011) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)); *Angel Flight of Ga., Inc. v. Angel Flight of Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

As for sections 7407 and 7408:

> Under section 7407, a district court is authorized to enjoin a tax return preparer from specified conduct, including conduct subject to penalty under I.R.C. §§ 6694 or 6695, and "engaging in . . . fraudulent or deceptive conduct which

> substantially interferes with the proper administration of the Internal Revenue laws." If such conduct has been continual or repeated, the court may enjoin a preparer from preparing any federal tax returns if it finds that a narrower injunction would be insufficient to prevent further interference with the administration of the tax laws. *Id.*; *see United States v. Ernst & Whinney*, 735 F.2d 1296, 1302-03 (11th Cir. 1984).
>
> Tax return preparers violate §§ 6694(a) and 6695 by understating a taxpayer's liability due to an unreasonable position, "reckless[ly] or intentional[ly] disregard[ing] of [IRS] rules or regulations," not identifying themselves as the paid preparer of a return, or claiming the Earned Income Tax Credit without complying with the statutory due diligence requirements. I.R.C. §§ 6694(a), (b), 6695(c), (g). Once the Government establishes any of the violations enumerated in § 7407, it need only demonstrate that "injunctive relief is appropriate to prevent recurrence of such conduct." § 7407(b)(2); *see Ernst & Whinney*, 735 F.2d at 1303.
>
> Under § 7408, a district court is authorized "to enjoin any person from further engaging in specified conduct," including acts subject to penalty under I.R.C. § 6701, if the court finds that the person "has engaged in" such conduct and if "injunctive relief is appropriate to prevent recurrence of such conduct." Section 6701(a) imposes a penalty on any person who: (1) "aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document"; (2) "knows (or has reason to believe) that such portion will be used in connection with a material matter arising under the internal revenue laws"; and (3) "knows that such portion (if so used) would result in an understatement of the liability for tax of another person." Violations of § 6701(c) include "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

*Stinson*, 661 F. App'x at 949-50.

The allegations in the United States' complaint demonstrate that a permanent injunction is necessary and appropriate. Injunctive relief is available under section 7402 becuase the United States has established that: (1) it suffered irreparable harm, as evident by the significant burden on the United States' limited resources to detect and audit the erroneous returns submitted by Madison and to prosecute Madison's fraudulent activity; (2) section 7402 empowers the Court to enter equitable relief (including injunctive relief and

11

disgorgement) as remedies for the violation of internal revenue laws; (3) the balance of hardships weighs in favor of the United States and against any loss Madison may suffer from the enjoining of his wrongful conduct; and (4) the public has a compelling interest in enjoining Madison from continuing to engage in such egregious conduct as he may cause his customers to owe tax deficiencies, interest, and penalties they would not have owed if their tax liabilities were reported accurately. *See Stinson*, 661 F. App'x at 953-54.

Injunctive relief is also available under sections 7407 and 7408 because Madison violated sections 6694(a), 6695 and 6701 of the IRC. In violation of sections 6694(a) and 6695, Madison "reckless[ly] or intentional[ly] disregarded" IRS rules and regulations when he knowingly entered false information onto his customers' tax returns in order to lower their tax liability or artificially inflate their refund. *Stinson*, 661 F. App'x at 949-50. As for section 6701, Madison aided customers in declaring their income and losses on their tax returns, knew this information would be used in connection with the government's assessment of the customer's tax liability, and knew that the falsifications and misrepresentations "would result in an understatement of the liability for tax of another person." *Id.* As such, against this backdrop, the United States is entitled to injunctive relief under sections 7402, 7407, and 7408.

### c. Disgorgement

The United States also seeks a money judgment against Madison on its claim for disgorgement of his ill-gotten gains received from the preparation of fraudulent tax returns in 2021, 2022, 2023, and 2024. (Doc. 95-3). The United States represents that its disgorgement request is limited to $322,270 in fees generated from Madison's preparation of federal income tax returns. (*Id.*).

12

Section 7402(a) gives district courts broad authority to issue orders and judgments as may be "necessary or appropriate for the enforcement of the internal revenue laws."  26 U.S.C. § 7402(a).  "Disgorgement in the amount of a defendant's 'ill-gotten gains' constitutes a 'fair and equitable' remedy as it reminds the defendant of its legal obligations, serves to deter future violations of the Internal Revenue Code, and promotes successful administration of the tax laws." *Stinson*, 239 F. Supp. 3d at 1326. "If entitled to disgorgement, the government need only produce a reasonable approximation of the amount Defendants received from their illegal activities." *United States v. Erilus & Herve Erilus, LLC*, 2018 WL 3727349, at *6 (M.D. Fla. July 27, 2018), *report and recommendation adopted*, 2018 WL 3854798 (M.D. Fla. Aug. 14, 2018) (citing *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004)).  Precision in the calculation of the amount is not required, but "[t]here must be a 'relationship between the amount of disgorgement and that amount of ill-gotten gain'" *Stinson*, 239 F. Supp. 3d at 1327.

As found above, Madison engaged in business practices that violate the IRC, the United States is entitled to a permanent injunction, and, based upon the well-pleaded facts of the United States' complaint, Madison unjustly enriched himself through his wrongful conduct. Therefore, the Court should compel the disgorgement of Madison's ill-gotten gains.

As for the amount, the evidence supports the entry of judgment for $322,270.  The United States bases its final disgorgement amount on the returns filed with the IRS under Madison's PTIN for tax years 2021 through 2024 and fee-for-preparation information provided by the third-party refund processor Madison used.  (Doc. 95 at 24).  The IRS Revenue Agent assigned to this matter, Agent Keith Hayes, matched tax preparation fees attributable to Madison's PTIN to returns filed for tax years 2021 through 2024 where

13

Madison reported losses to a sole proprietorship. (Doc. 95-3 at ¶ 9). The $322,270 sum therefore represents the amount of fees Madison received for submitting client returns that claimed losses to a sole proprietorship. Because Madison improperly represented such losses as part of his scheme, (Doc. 1 at ¶ 79-90), the fees that Madison received for the tax returns claiming sole proprietorship losses are a "reasonable approximation of [Madison's] ill-gotten gains." *Stinson*, 239 F. Supp. 3d at 1327. Based upon this record, judgment should be entered requiring Madison to disgorge $322,270 to the government.

Finally, while the United States does not address the propriety of injunctive relief or disgorgement against Madison Tax Services, it should be given the opportunity to raise these issues in a supplemental submission to the Court.

## III.    Conclusion

Accordingly, the undersigned **RECOMMENDS:**

1.  The United States' Motion for Default Judgment and Permanent Injunction against Defendant Darryl Madison (Doc. 95) be granted;

2.  The United States' Motion to Hold Defendant Madison Tax Services in Contempt (Doc. 96) be granted in part and denied in part;

3.  The Clerk of Court be directed to enter default judgment against Defendant Darryl Madison and Defendant Madison Tax Services;

4.  The Clerk of Court be directed to enter judgment in the United States' favor against Defendant Darryl Madison in the amount of $322,270 for disgorgement;

5.  The United States be directed to file a proposed permanent injunction against Defendant Darryl Madison for the Court's approval; and

14

6. The United States be permitted to file a supplemental motion regarding injunctive relief and disgorgement against Defendant Madison Tax Services.

**IT IS SO REPORTED** in Tampa, Florida, on May 6, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.